# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____X

MARICULTURA DEL NORTE, S. DE R.L.          :
DE C.V. *et al.*,                          :
                                           :
            Plaintiffs,                    :    Case No. 1:14-cv-10143 (CM)
                                           :
            v.                             :
                                           :
WORLDBUSINESS CAPITAL, INC., *et al.*,     :
                                           :
            Defendants.                    :
_____X


## MEMORANDUM OF LAW OF DEFENDANT UMAMI SUSTAINABLE SEAFOOD, INC. IN SUPPORT OF ITS RULE 60 MOTION TO (A) REOPEN AND REDUCE THE AMENDED JUDGMENT AND (B) REDUCE THE SUPERSEDEAS BOND


**GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP**
711 Third Avenue
New York, New York 10017
T:  (212) 907-7300
F:  (212) 754-0330

and

**KURZMAN EISENBERG CORBIN
& LEVER LLP**
1 North Broadway, 12th Fl.
White Plains, New York 10601
T: (914) 285-9800
F: (914) 993-6003

*Attorneys for Defendant
Umami Sustainable Seafood, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND FACTS ...................................................................................... 5

    The Amended Judgment and Appeals to the Second Circuit ........................... 5

    Marnor Assigns the Amended Judgment to Servax and Settles with WBC ..................... 5

    The Mexican Foreclosure Proceedings Related to Interest Conclude ............... 6

    Umami's Prior Motion to Reduce Amended Judgment and Bond ..................... 7

    The Customs Fee Assessment Is Vacated ......................................................... 8

    The Second Circuit Affirms the Amended Judgment ..................................... 10

ARGUMENT ...................................................................................................... 12

I.    THE COURT HAS THE AUTHORITY TO REOPEN AND REDUCE THE AMENDED JUDGMENT ................................................................. 12

II.    THE COURT SHOULD REDUCE THE AMENDED JUDGMENT BY $750,000 AS A RESULT OF THE WBC SETTLEMENT ............................ 12

III.    THE COURT SHOULD REDUCE THE AMENDED JUDGMENT TO OFFSET THE MEXICAN INTEREST JUDGMENT ................................... 13

    A.    The Court Should Offset the Amended Judgment Pursuant to Rule 60(b)(6) ............................................................................... 13

    B.    Umami is Entitled to a Setoff Pursuant to DCL § 151 and the Common Law .............................................................................. 15

    C.    If the Court Determines Recognition of a Foreign Judgment is Required, the Mexican Interest Judgment Can and Should Be Recognized ......... 18

    D.    Marnor's Assignment of the Amended Judgment to Servax Does Not Preclude the Relief Requested ............................................. 19

IV.    THE COURT SHOULD REDUCE THE AMENDED JUDGMENT BY THE CUSTOMS FEE BECAUSE THE ASSESSMENT HAS BEEN VACATED BY THE MEXICAN COURT ............................................................. 20

V.    UMAMI'S MOTION IS BROUGHT WITHIN A REASONABLE TIME ............ 22

CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Master Value Fund, Ltd. v. Ewing*,
No. 09 CIV. 8862 GBD, 2014 WL 3600409 (S.D.N.Y. July 11, 2014) ...........................19, 20

*Aspen Indus., Inc. v. Marine Midland Bank*,
52 N.Y.2d 575 (1981) ..........................................................................................................16

*Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*,
85 F.3d 44 (2d Cir. 1996)......................................................................................................16

*In re Bennett Funding Grp., Inc.*,
146 F.3d 136 (2d Cir. 1998)...................................................................................................18

*Bensen v. American Ultramar Ltd.*,
No. 92 CIV. 4420 (KMW)(NRB), 1996 WL 422262 (S.D.N.Y. July 29, 1996)......................9

*Candiano v. Moore-McCormack Lines, Inc.*,
407 F.2d 385 (2d Cir. 1969)............................................................................................21, 22

*Citizens Bank of Maryland v. Strumpf*,
516 U.S. 16 (1995)................................................................................................................17

*Dresdner Bank AG v. Haque*,
161 F.Supp.2d 259 (S.D.N.Y. 2001)......................................................................................19

*Matter of Emergency Beacon Corp.*,
666 F.2d 754 (2d Cir. 1981)..................................................................................................22

*Fin. One, Inc. v. Timely Textiles, Inc.*,
No. 09 CIV. 4624 (JSR), 2010 WL 882907 (S.D.N.Y. Mar. 8, 2010) ...................................20

*Madigan v J.P. Gibbons & Co., Inc.*,
16-MC-965 (RRM)(PK), 2018 WL 4522087 (E.D.N.Y. June 13, 2018) ...................13, 22, 23

*Michigan Sur. Co. v. Serv. Mach. Corp.*,
277 F.2d 531 (5th Cir. 1960) ................................................................................................20

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986)....................................................................................................13

*P.T. Busana Idaman Nurani v. Marissa by GHR Ind. Trading Corp.*,
151 F.R.D. 32 (S.D.N.Y. 1993) ..................................................................................13, 14, 22

*Singer v. Olympia Brewing Co.*,
    878 F.2d 596 (2d Cir.1989).................................................................12

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
    No. 10CV5256, 2016 WL 958640 (S.D.N.Y. Mar. 8, 2016).............................17, 18

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    864 F.3d 172 (2d Cir. 2017)..............................................................20

*U.S. v. Rodgers*,
    101 F.3d 247 (2d Cir. 1996)..............................................................12

*W. Harlem Pork Ctr., Ltd. v. Empire Nat. Bank*,
    60 A.D.2d 859 (2d Dep't 1978)............................................................16

*Wechsler v. Hunt Health Sys., Ltd.*,
    No. 94 CIV. 8294 (PKL), 2003 WL 22764545 (S.D.N.Y. Nov. 21, 2003)..................9

*In re Westchester Structures, Inc.*,
    181 B.R. 730 (Bankr. S.D.N.Y. 1995).....................................................18

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 138 (2d Cir. 2002)..............................................................17

**Other Authorities**

N.Y. Debtor & Creditor Law § 151 .................................................. *passim*

CPLR § 5302....................................................................................18, 19

CPLR § 5303....................................................................................19

CPLR § 5304(a) ...............................................................................19

F.R.C.P. Rule 60(b)..........................................................................*passim*

Fed. R. Evid. 801 ............................................................................9

Defendant Umami Sustainable Seafood, Inc. ("Umami") respectfully submits this Memorandum of Law, accompanied by the Declarations of its Mexican Law experts, Rodrigo Zamora, dated July 31, 2019 ("Zamora Decl."), and Alfredo Gustavo Servin Padilla, dated August 20, 2019 ("Padilla Decl."), and the Declaration of Martin S. Siegel ("Siegel Decl."), dated August 21, 2019, in support of its Motion pursuant to Federal Rule of Civil Procedure 60 ("Rule 60") to Reopen and Reduce the Amended Judgment entered in this matter on August 24, 2017, and reduce the Supersedes Bond filed by Umami accordingly.

## PRELIMINARY STATEMENT

Umami respectfully renews its request that the Court grant relief with respect to the Amended Judgment[1] issued in favor of Plaintiff Maricultura del Norte S. de R.L. de C.V. ("Marnor") (later assigned to Servax Bleu, S. De R.L. de C.V. ("Servax")) and against Umami and WorldBusiness Capital, Inc. ("WBC"), jointly and severally, on August 24, 2017. Umami initially moved for a reduction of the Amended Judgment in October 2018. (Dkt Nos. 264, 267.) On or about April 26, 2019, the Court denied Umami's request, holding that the Court did not have jurisdiction to modify the Amended Judgment during the pendency of appeals with the Second Circuit Court of Appeals, but did so without prejudice to Umami's right to renew its request as a Rule 60 Motion once the Second Circuit issued its mandate. (Dkt. No. 269.) After affirming the Amended Judgment, the Second Circuit issued its mandate on May 28, 2019 (the "Mandate").

Since then, Umami has conferred with counsel for Marnor/Servax to seek to narrow the scope of disputed issues related to the enforcement of the Amended Judgment. The parties' discussions concluded without resolution. During that same time, a final non-appealable ruling was issued in Mexico overturning and nullifying the tax assessment that caused the Customs Fee

---

[1] Defined terms not defined herein shall have the meanings ascribed to them below in the Background Facts.

damages part of the Amended Judgment. Accordingly, Umami brings the instant motion to renew its prior motion and seek relief from the Customs Fee.

Pursuant to Rule 60(b), Umami hereby requests that the Court reopen and reduce the Amended Judgment by $2,762,535.08 based on the following: (i) $750,000.00, as a result of a settlement between WBC and Marnor/Servax (the "WBC Settlement"); (ii) $1,087,755.09, to set off the final, non-appealable judgment issued by the Mexican Court in favor of Umami against Marnor, dated April 5, 2018 (the "Mexican Interest Judgment"); and (iii) $750,000 as a result of the overturning of the Customs Fee assessment by the Mexican Court and $174,759.99 for prejudgment interest on the Customs Fee. Umami further requests that the Court approve reducing the Bond by 111% of $2,762,535.08, or a total of $3,038,788.58.

Marnor/Servax consents to the offset of the Amended Judgment by $750,000 as a result of the WBC Settlement and to reduce the Bond by 111% of that amount, or $832,500.00. (Dkt. Nos. 259, 265 at 1.)[2] The Court should therefore reduce the Amended Judgment by that amount, and the Bond accordingly, under any circumstances.

The Court also should set off the Amended Judgment by the Mexican Interest Judgment, and reduce the Bond accordingly, for two reasons: (i) relief is warranted under Rule 60(b)(6) because, absent such relief, Marnor will obtain a windfall by collecting $1.087 million from Umami as a result of this Court's judgment, while simultaneously failing to pay $1.087 million to Umami in Mexico on the Mexican Interest Judgment; and (ii) pursuant to N.Y. Debtor & Creditor

---

[2] After Umami told counsel for Marnor/Servax that it was making this Motion and sought to agree to a briefing schedule, on August 13, 2019, Servax, as Assignee of the Amended Judgment from Marnor, filed a Motion for a Writ of Execution and for a Turnover Order (Dkt. No. 273). In its Memo of Law in Support of the Motion (Dkt. No. 274), at p. 3, Servax acknowledges that the unpaid balance of the Amended Judgment would be $2,409,481.92 after deducting the WBC Settlement.

Law ("DCL") § 151 and the Common Law, Umami is entitled to a set off of $1,087,755.09 as a result of the Mexican Interest Judgment.

In its Amended Judgment, this Court held that, but for Umami's breach of contract, Marnor would not be responsible for certain interest awarded to Umami in the Mexican Foreclosure Proceeding. During the trial of this case, the Mexican Foreclosure Proceeding still was ongoing. As a result, this Court awarded Marnor "$1,549,975, representing the difference in interest awarded thus far by the court in the Mexican foreclosure proceedings over and above the $6.01 million Marnor was entitled to pay in November 2012 …." (the "Interest Differential"). (Dkt. No. 251 ¶ 1.)

Since the issuance of the Amended Judgment, the Mexican Foreclosure Proceeding has concluded and the Mexican District Court has ordered Marnor – by a final and non-appealable judgment – to pay $1,087,755.09 to Umami for the interest that was not satisfied by the allocation of certain vessels to Umami during the enforcement proceedings in Mexico. It is undisputed that (1) Marnor has not paid the Mexican Interest Judgment, and (2) Marnor is now out of business and does not have the ability to pay the Mexican Interest Judgment.

Umami respectfully submits that this Court's intention in awarding Marnor the Interest Differential was to provide Marnor with funds to pay the outstanding Mexican judgment for interest that the Court determined was a result of Umami's breach of contract. The intent was not, however, to allow Marnor to double dip by refusing to pay the Mexican Interest Judgment to Umami in Mexico, while simultaneously collecting from Umami that same amount in New York and keeping that money without paying it to Umami. Accordingly, the Court should offset the Amended Judgment with the Mexican Interest Judgment.

Although Umami submits that this Court need not recognize the Mexican Interest Judgment in order to offset the Amended Judgment, to the extent the Court finds that recognition pursuant to CPLR § 5302, it is required to modify the Amended Judgment and the Court can and should recognize the Mexican Interest Judgment as all factors necessary for such recognition are present. Further, Marnor's assignment of the Amended Judgment to Servax does not impact Umami's entitlement to a setoff of the Interest Differential.

In addition, subsequent to Umami's earlier motion, the assessment of $750,000 which resulted in the Customs Fee damage awarded as part of the Amended Judgment was overturned by the Mexican Court, and that assessment was ruled a nullity (the "Tax Decision"). Thereafter, both Marnor and Tax Authority appealed and/or filed amparo proceedings concerning the Tax Decision. Recently, the appeals and amapro proceedings to the Tax Decision were denied and the Tax Decision nullifying the Customs Fee assessment became final and unappealable. Accordingly, Marnor no longer has any tax liability for the Customs Fee. Since Marnor had been awarded $750,000 to compensate it for an assessment that has been nullified, Marnor no longer has any damages as a result of Customs Fee assessment that was part of the Amended Judgment. For this reason, under Rule 60(b)(5), the Amended Judgment should be modified because it was "based on an earlier judgment that has been reversed or vacated." In addition, since the assessment was deemed a nullity, prejudgment interest on that $750,000, or $174,759.99, should be deducted from the Amended Judgment.

For the reasons set forth herein and, in the Declarations attached hereto, the Court should grant Umami's requested relief.

## BACKGROUND FACTS

### *The Amended Judgment and Appeals to the Second Circuit*

On August 24, 2017, the Court issued the amended judgment against Umami and WBC, jointly and severally, in the amount of $3,094,447.16 (the "Amended Judgment"). Umami is only liable for the portion of the legal fees and costs incurred "from and after January 28, 2013." (Dkt. No. 237 at 59-60 ¶¶ 10-12.) These damages included the following: (i) "$1,549,975, representing the difference in interest awarded thus far by the court in the Mexican foreclosure proceedings over and above the $6.01 million Marnor was entitled to pay in November 2012 …." (*id.* at 76); and (ii) $750,000, representing the amount allegedly assessed against Marnor by the Mexican government for Marnor's failure to remove certain of its vessels from Mexican waters during a ten year period (2003/2004-2013/2014) (the "Customs Fee") (*Id.* at 67-68, ¶¶ 30-35).

Following the Amended Judgment, Umami noticed its appeal to the Second Circuit Court of Appeals on August 30, 2017. (Dkt. No. 252.) At or around the same time, other parties, including Marnor and Servax, also timely noticed appeals and cross-appeals of the Amended Judgment. (Dkt. Nos. 245, 248, 253.)

### *Marnor Assigns the Amended Judgment to Servax and Settles with WBC*

During the pendency of the Appeals, on April 12, 2018, Marnor and Servax filed a Notice of Assignment stating that Marnor had assigned all right, title, and interest in the Amended Judgment to Servax. (Dkt. No. 254).

On or about May 23, 2018, WBC entered into a confidential Settlement Agreement (the "Settlement Agreement") with Marnor and Servax. As a result, WBC is no longer a party to this action. Servax represented to the Court (and to Umami's counsel) that the parties to the Settlement Agreement allocated $750,000.00 of the total settlement amount to the Amended Judgment. (*See*

Dkt. No. 264 at 4; 259 at 1.)  Ex. A to Servax's recent Motion to Enforce the Judgment (Dkt. No. 274-1 (filed under seal)) is the Settlement Agreement with WBC.

Following WBC's dismissal from the case, Umami timely posted a supersedes bond (the "Bond") in the amount of $3,434,836.35, which was approved by the Clerk.  (Dkt. No. 256.) [3]

### *The Mexican Foreclosure Proceedings Related to Interest Conclude*

During and after trial in this Court, various enforcement proceedings continued in Mexico regarding the final calculation of interest, issuance of a final judgment thereon, and the partial satisfaction of the debt owed to Umami through the Mexican courts' allocation of certain of Marnor's vessels to Umami.

At the time of trial in this Court, the Mexican courts had ordered Marnor to pay approximately $7.5 million in principal and interest.  This was comprised of approximately $5.2 million in principal ordered on January 28, 2013, and approximately $2.2 million in ordinary and default interest ordered on September 29, 2016 (DX-372).   In the Enforcement Proceedings in Mexico, in partial satisfaction of the outstanding judgments for principal and interest, the Mexican courts issued two orders assigning Marnor's property – certain vessels – to Umami.  (*See* Zamora Decl. ¶ 8.)  After the assignment of certain of Marnor's vessels to Umami, the outstanding amount still owed to Umami for interest was $1,087,755.09.  (Zamora Decl. ¶ 10.)  Umami was owed this amount at the time of the trial in this Court.

Following the trial, the parties continued to litigate the September 29, 2016 judgment of the Mexican court that had ordered Marnor to pay Umami ordinary and default interest.  (*Id.* ¶ 12; DX-372.)  In mid-2018, the proceedings in Mexico related to interest finally concluded.  On April

---

[3] WBC previously had posted a bond in the amount of $3,147,850.00.  Because WBC was liable for the entire amount of the Amended Judgment, Umami was not required to post its own bond prior to WBC's dismissal from the case.  (Dkt No. 247).

5, 2018, the Fourth Federal Unitary Court of the Fifteenth Circuit issued a final judgment confirming the September 29, 2016 judgment for interest (the "Mexican Interest Judgment"). (Zamora Decl. ¶¶ 12-13.) A copy of the Mexican Interest Judgment, and a certified English translation, are attached to the Zamora Decl. as Exhibit A.

On July 20, 2018, the Seventh District Court Ensenada B.C. of the Federation of United Mexican States issued an order summarizing the prior judgments in favor of Umami in the amount of $1,087,755.09. (Zamora Decl. ¶¶ 14-15.) A copy of the July 20, 2018 Judgment, and a certified English translation, are attached to the Zamora Decl. as Exhibit B.

On June 4, 2019, the Mexican District Court issued an Order affirming the Mexican Interest Judgment as a final, non-appealable and enforceable judgment against Marnor in Mexico, of which $1,087.755.09 remains outstanding. (Zamora Decl. ¶¶ 16-17.) A copy of the June 4, 2019 Order and a certified English translation, are attached to the Zamora Decl. as Exhibit C.[4]

***Umami's Prior Motion to Reduce Amended Judgment and Bond***

On October 9, 2018, Umami filed a Motion to (1) reduce the Amended Judgment by (a) $750,000 representing the settlement allocation between WBC and Marnor/Servax, and (b) $1,087,755.09 representing the unpaid final Mexican interest judgment;[5] and (2) modify the amount of the Bond accordingly (the "Original Umami Motion"). (Dkt. No. 261.)[6] Following a limited objection by Marnor/Servax (Dkt. 265-66), on April 26, 2019, this Court denied Umami's

---

[4] To the extent that the Court requires an Apostille pursuant to the Hague Convention of any of the Mexican judgments referenced herein, Umami will supplement the record.

[5] At the time of the Original Motion, Umami moved for relief based on the July 20, 2018 Order. However, for the avoidance of doubt, Umami now proffers the April 5, 2018 Judgment, as well as the July 20, 2018 Order, and the subsequently issued June 4, 2019 Order. These decisions confirm that, as a result of a final, non-appealable judgment in Mexico, Marnor still owes Umami $1,087,755.09. *See* Zamora Decl., Exs. A-C.

[6] The Original Umami Motion also moved to compel the production of the Settlement Agreement. (Dkt. No. 261.) Umami does not hereby renew its motion to compel the Settlement Agreement because, subject to a confidentiality agreement, Marnor/Servax has since produced a copy of the agreement to Umami, and filed it, under seal, with its Motion for a Writ of Execution.

motion without prejudice to "renew[] once the case [was] remanded." (Dkt. No. 269 at 12) The Court held that it did not have jurisdiction to modify the Amended Judgment during the pendency of the appeal with the Second Circuit. The Court also denied Umami's corollary request to reduce the Bond. (*Id.* at 11.) The Court held that Umami could renew its motion in the form of a Rule 60(b) motion once the Court of Appeals issues its mandate. *Id.* at 12 ("[o]nce the Court of Appeals issues its mandate, Umami can decide whether to file a Rule 60(b) motion on the basis of the Mexican judgment….")

***The Customs Fee Assessment Is Vacated***

In its Amended Judgment, the Court awarded Marnor damages of $750,000 to compensate Marnor for an assessment made for "customs liabilities incurred due to Marnor's inability to repariatiate and reimport its fleet in Mexico." (Dkt. No. 237 at 67-68, ¶¶ 30, 32.) That liability was based on Phillipe Charat's testimony that the arrest of certain of Marnor's vessels "*resulted in Marnor being assessed three-quarter of a million in duties, fees and penalties.*" *Id.* ¶ 31 (emphasis in original).

At the time of trial, the Customs Fee was not a final assessment, as it was subject to appeals and amparo challenges. (Padilla Decl. ¶¶ 5-6.) On October 25, 2018, the Northwest Regional Administrative Court I of the Administrative Justice Federal Court issued a decision (the "Tax Decision") vacating the assessment that resulted in the Customs Fee. A copy of the Tax Decision and a certified translation is attached as Exhibits B and C respectively to the Padilla Declaration. In the Tax Decision, the court declared that the Customs Fee assessed against Marnor was null and void. (Padilla Decl. ¶ 7.)

Umami first learned of the Tax Decision on November 13, 2018, when Patrick Martin, Marnor's counsel in the Mexican tax proceeding, informed counsel for Umami and other parties that the Customs Fee had been overturned in Mexico (but was still subject to appeal). A true and

accurate copy of Mr. Martin's email to counsel is attached as Exhibit A to the Siegel Declaration.[7]

Mr. Martin's email establishes that the Tax Decision – which relates to an assessment of 12,189,538.36 Mexican pesos – is the same assessment for the Customs Fee of $750,000 awarded to Marnor in the Amended Judgment. (*See* Siegel Decl. Ex. A at 6) (stating that "the then applicable US-Mexico currency exchange equated to approximately US$750,000 (MX$12,189,538.36 pesos) as reflected in the verdict" and that "the late Mr. Charat … testified in federal district court regarding the 'three-quarters of a million dollars' tax determination by the Mexican Federal authorities").

Upon receipt of Mr. Martin's email, Umami promptly informed the Second Circuit, by letter on November 21, 2018, that the Customs Fee had been vacated. (2d Circuit Court of Appeals Case No.: 17-2587, Dkt. No. 286.) At the time of the Second Circuit argument, the Tax Decision was not final, as both Marnor and the Mexican tax authorities had appealed the Tax Decision and/or brought amparo challenges. (Padilla Decl. ¶ 9.)

On January 22, 2019, Mr. Martin – who has personal knowledge of the matters based on his representation of Mr. Charat and Marnor in the proceedings – confirmed that the Tax Decision is not merely a reduction of the penalties and interests, but that "the entire assessment was

---

[7] Mr. Martin was at the relevant time, and upon information and belief, still is Marnor's attorney in connection with the Customs Fee and the Mexican Tax Proceeding. Therefore, Mr. Martin's statements are admissible against Marnor as a party admission. *See* Fed. R. Evid. 801(d)(2) (It is not hearsay to offer a statement against an opposing party that "(C) was made by a person whom the party authorized to make a statement on the subject" or "(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"). Thus, "'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'" *Wechsler v. Hunt Health Sys., Ltd.,* No. 94 CIV. 8294 (PKL), 2003 WL 22764545, at *2 (S.D.N.Y. Nov. 21, 2003), *quoting United States v. Margiotta*, 662 F.2d 131, 142-43 (2d Cir.1981) (overturned on other grounds)(attorney's statement in letter to opponent's attorney was admissible as admission by party under 801(d)(2)(D), since attorney acted as agent of party in authoring letter, and letter concerned matter within attorney's employment, namely, representation of the party). *See also, Bensen v. American Ultramar Ltd.*, No. 92 CIV. 4420 (KMW)(NRB), 1996 WL 422262, at *10-11 (S.D.N.Y. July 29, 1996) (certain statements made by law firm constituted party admissions under Rule 801(d)(2)(C) and (D)).

'revoked' (determined to be invalid)." (Siegel Decl. Ex. A.) On February 1, 2019, Mr. Martin again confirmed that "Maricultura currently has no outstanding tax liability at all. Maricultura prevailed and won[.]"[8] *Id.* However, the decision still was subject to further appeal and amparo challenge in the Mexican courts.[9] *Id.*

On June 28, 2019, the Sixth Collegate Tribunal for Administrative Matters of the Fifteenth Circuit (the "Superior Court") issued a decision resolving the amparo trial and appeal by the Tax Authority (the "Superior Court Decision"). The Superior Court Decision confirmed that the Tax Decision's decision nullified the assessment of 12,189,538 pesos. The Tax Decision is now final and no longer subject to appeal. (Padilla Decl. ¶ 12.) Marnor no longer has any tax liability with respect to the Customs Fee. (*Id.* ¶ 13.) The Customs Fee cannot be reassessed by the Mexican tax authorities. (*Id.* ¶ 12.) A copy of the publicly available version of the Superior Court Decision, and a certified English translation, is attached as Exhibits C and D to the Padilla Declaration.

### *The Second Circuit Affirms the Amended Judgment*

On November 30, 2018, the Second Circuit heard argument on the parties' appeal. On May 7, 2019, the Second Circuit issued a Summary Order on the parties' consolidated appeals of the Amended Judgment that affirmed the District Court's orders and judgments in all respects (the "Summary Order"). The Second Circuit issued its mandate on May 28, 2019 which contains the Summary Order. (Dkt. No. 272.)

---

[8] Mr. Martin's email also refers to a second assessment of $20 million Mexican pesos for failure to return two other fishing vessels (Buenaventura V and Buenaventura VI). The fact that the Customs Fee was based only on certain vessels that had been assessed at the time of trial and not for these other vessels is further confirmed by an email from Ilan Rosenberg, dated June 25, 2019 (Siegel Decl., Ex. B) in which Mr. Rosenberg lists those vessels that were subject to the assessment that was part of the Customs Fee liability included in the Amended Judgment. As noted by Mr. Rosenberg "since the date of the judgment, the Tax Authorities have issued additional assessments." *Id.* Those additional assessments, including the one referred to in Mr. Martin's email, were not part of the Customs Fee awarded to Marnor in the Amended Judgment and, therefore, are not before the Court, nor part of this Motion.

[9] Umami is not a party to the Tax Court case or the appeal and amparo proceeding. Thus, Umami's counsel did not learn of the Superior Court decision until early August 2019.

With respect to the Interest Differential, the Second Circuit noted that, while the lack of finality of the Mexican court's interest award at the time of trial did not prevent it from affirming that portion of the District Court's damages award, it could lead to "troubling" results if Marnor obtains a "windfall" by recovering more from Umami as a result of the Amended Judgment from this Court than it paid to Umami in Mexico. (Dkt. No. 272 at 8-9.) Specifically, the Second Circuit stated:

> Umami notes that Marnor has not paid any of the damages award by the Mexican court and that the Mexican court's judgment remains on appeal in Mexico. Umami raises the possibility that, if the Mexican court's damages award were vacated (or decreased) on appeal, Marnor "would receive a windfall by collecting more from Umami than it will ever pay to Umami in Mexico." Umami Br. at 46. We agree that this possibility is troubling.... (*Id.*)

The Second Circuit went on to state that, "any future changes to the Mexican court's damages award, to the extent that they affect the district court's interest-differential award below, are better addressed via a motion to reopen the judgment in the district court pursuant to [Rule 60]." (*Id.* at 9.)

With respect to the Customs Fee, the Second Circuit stated:

> One week before oral argument in this appeal, the parties informed us that a Mexican tax court had recently vacated the $750,000 customs fee assessed to Marnor. Umami argues on that basis that we should exclude the customs fee from the district court's damages award, too. Again, we think this argument better addressed to the district court below via a Rule 60 motion to reopen the judgment. At oral argument, both parties agreed on the appropriateness of a Rule 60 conference with the district court to address this development. We expect the parties to proceed with that approach.

(*Id.* at 10 n. 2).

# ARGUMENT

## I.  THE COURT HAS THE AUTHORITY TO REOPEN AND REDUCE THE AMENDED JUDGMENT

In its April 26, 2019 Decision, the Court held that, upon issuance of the Mandate by the Second Circuit, Umami could renew its request as a Rule 60 motion to reopen and reduce the Amended Judgment. (Dkt. No. 269 at 6-10.) The Second Circuit issued the Mandate on May 28, 2019. The issuance of the Mandate restores jurisdiction over this matter to the Court. *Id.*; *see also U.S. v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (holding a district court regains jurisdiction upon the issuance of the mandate by the clerk of the court of appeals.) Thus, the Court now has jurisdiction to grant the requested relief to reopen and reduce the Amended Judgment.

## II.  THE COURT SHOULD REDUCE THE AMENDED JUDGMENT BY $750,000 AS A RESULT OF THE WBC SETTLEMENT

The Court should reduce the Amended Judgment by $750,000.00, representing the portion of the WBC Settlement allocated to the Amended Judgment. F.R.C.P. Rule 60(b)(5) permits the Court to relieve a party from a final judgment where "the judgment has been satisfied, released or discharged…." As a result of the WBC Settlement, the Amended Judgment has been partially "satisfied, released or discharged." *Id.*; *see also Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.1989) (recognizing long-standing rule that "when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment…") Counsel for Marnor/Servax has consented to this relief, as indicated in their October 23, 2018 Response in Partial Opposition to Umami's Original Motion (Dkt. No. 265 at 1), and in Servax's recent Motion (Dkt. No. 274). As such, based upon the WBC Settlement, and opposing counsel's consent, the Court should reduce the Amended Judgment by $750,000.00, and reduce the Bond by $832,500.00.

### III. THE COURT SHOULD REDUCE THE AMENDED JUDGMENT TO OFFSET THE MEXICAN INTEREST JUDGMENT

The Court also should reopen and reduce the Amended Judgment to offset the Mexican Interest Judgment, and reduce the Bond accordingly. Umami is entitled to a setoff for the Mexican Interest Judgment for two separate and independent reasons: (i) relief is justified pursuant to Rule 60(b)(6) because, without such a set-off, Marnor will recover more in New York for interest than it will pay in Mexico on the Mexican Interest Judgment; and (ii) Umami is entitled to the right of set-off pursuant to NY DCL § 151 and the Common Law. In addition, while the Court does not need to recognize the Mexican Interest Judgment as a foreign judgment to grant the relief requested herein, to the extent the Court finds that recognition is required, the Court can and should recognize the Mexican Interest Judgment, as all elements required for recognition are present. Further, Marnor's assignment of the Amended Judgment to Servax does not preclude the set-off requested by Umami.

#### A. The Court Should Offset the Amended Judgment Pursuant to Rule 60(b)(6)

Pursuant to Rule 60(b)(6), the Court should reduce the Amended Judgment in the amount of $1,087,755.09. Without an offset, Marnor/Servax will obtain a windfall – which, as the Second Circuit noted, would be a "troubling" result. (Dkt. No. 272 at 8-9.)

Rule 60(b)(6) grants the Court discretion to modify a judgment for any reason that "justifies relief." Where exceptional circumstances – like the ones here – are shown, Rule 60(b)(6) should be "broadly construed to do substantial justice." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal citations and quotations omitted); *Madigan v J.P. Gibbons & Co., Inc.*, 16-MC-965 (RRM)(PK), 2018 WL 4522087, at *7-8 (E.D.N.Y. June 13, 2018) (recommending relief from U.S. judgment enforcing a foreign judgment pursuant to Rule 60(b)(6) where the underlying foreign judgment was unenforceable in foreign country). Relief from a judgment is

appropriate when the moving party presents "extraordinary circumstances, such as when the judgment may work an extreme hardship." *P.T. Busana Idaman Nurani v. Marissa by GHR Ind. Trading Corp.*, 151 F.R.D. 32, 34 (S.D.N.Y. 1993) (vacating judgment under Rule 60(b)(6)) (internal quotes omitted).

Here, exceptional circumstances warrant relief in the form of a reduction of the Amended Judgment by $1.087 million. Unless the Court offsets the Amended Judgment by the Mexican Interest Judgment, Marnor will receive a windfall by collecting and keeping $1.087 million from Umami as a result of this Court's judgment, while Marnor has not paid the $1.087 million judgment in Mexico for interest. The Court held that Umami's breach of contract caused Marnor to wrongfully incur damages for interest as a result of the Foreclosure Proceeding in Mexico. (Dkt. No. 237 at 65 ¶¶ 21-22.) At the time of trial, however, the Mexican Foreclosure Proceeding was ongoing and the ultimate damages unknown. Therefore, the Court granted Marnor the Interest Differential, *i.e.*, "$1,549,975, representing the *difference in interest awarded thus far by the court in the Mexican foreclosure proceedings* over and above the $6.01 million Marnor was entitled to pay in November 2012 to retire its debt to WBC and redeem its fleet." (Dkt. No. 251 at 1) (emphasis added). Since trial, the Mexican Foreclosure Proceedings have concluded, and Mexican courts have issued a final, conclusive and enforceable judgment (*i.e.*, the Mexican Interest Judgment) in favor of Umami, of which $1,087,755.09 remains outstanding. (Zamora Decl. ¶ 10.)

As a result, Marnor owes Umami $1,087,755.09 in Mexico, and Umami owes Marnor approximately $3.0 million in New York for the Amended Judgment, which includes the $1,087,755.09 awarded by this Court in order for Marnor to pay the interest awarded to Umami in Mexico. *See* Dkt. No. 266, Declaration of Alonso Vega in Opposition to Marnor's Original

Motion ("Vega Original Decl.") ¶ 9 (acknowledging that Marnor still owes Umami a sum certain ($1.087 million) for interest in Mexico). The assignment of certain of Marnor's vessels to Umami (as discussed above and in the Zamora Decl. ¶¶ 8-9) only covered a portion of the interest awarded at the time of trial - $1,087,000.00 still remains unpaid.

The reason of Marnor's non-payment is simple - Marnor has no ability to pay. Marnor is no longer in business and has transferred its only asset (the Amended Judgment) to Servax. Accordingly, Umami has no ability to collect on the Mexican Interest Judgment in Mexico. Absent an offset in this Court against the Amended Judgment, Marnor will recover $1.087 million from Umami in New York as a result of the Amended Judgment that was intended to compensate Marnor for the interest Marnor was required to pay to Umami in Mexico. But Marnor has not paid Umami $1.087 million of the interest judgment awarded to Umami in Mexico and never will. In other words, absent an offset, Marnor will just pocket $1.087 million, which Umami does not believe was the result intended by the Court's award of the Interest Differential to Marnor. Umami believes that the Court awarded Marnor the Interest Differential solely to reimburse Marnor for the interest that Marnor would pay to Umami as a result of the Mexican courts' final award, not to permit Marnor to double dip by keeping the monies collected from Umami in New York for interest, yet simultaneously failing to pay Umami in Mexico for that interest award.

For these reasons, relief from the Amended Judgment to offset the Mexican Interest Judgment is warranted pursuant to Rule 60(b)(6).

### B.  Umami is Entitled to a Setoff Pursuant to DCL § 151 and the Common Law

Separately, Umami is entitled to a setoff as a debtor under DCL § 151 because Umami's enforcement actions in Mexico have triggered the protections afforded to debtors under DCL § 151, and the Amended Judgment and the Mexican Interest Judgment are mutual debts.

DCL § 151 codifies the common law right to set off and provides debtors with the right to a setoff where the debtor has engaged in any enforcement proceedings against the property of the creditor. A debtor's right to offset is trigged by, among others "the issuance of any execution against any of the property of a creditor[,] [or] the issuance of a subpoena or order… against or with respect to any of the property of a creditor[,]…." DCL § 151(d-e).

Umami's enforcement proceedings in Mexico to collect on the Mexican judgments, and the Mexican court's allocation of Marnor's vessels to Umami in partial satisfaction of that debt, are enforcement proceedings within the meaning of DCL § 151. *See Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 582 (1981) ("[B]y enacting section 151 of the Debtor and Creditor Law, the Legislature intended to 'cover the field' in terms of the garnishee's right of setoff vis-à-vis the various enforcement devices….); *W. Harlem Pork Ctr., Ltd. v. Empire Nat. Bank*, 60 A.D.2d 859, 859–60 (2d Dep't 1978) ("a careful examination of [Section 151's] operative provisions reveals an evident design on the part of the Legislature to 'cover the field' in terms of protecting the right of set off created thereby from intervening legal proceedings"); *cf. Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47 (2d Cir. 1996) (Section 151's right of set-off not limited to enforcement under New York law).

Thus, the Mexican Court's March 17, 2015 judgment assigning certain property of Marnor (the creditor) to Umami (the debtor) in partial satisfaction of the judgments against Marnor is an "execution against [the] property of [the] creditor." (*See* Zamora Decl. ¶8.) Similarly, the Mexican Court's November 16, 2016, assignment of the Buenaventura I to Umami (in the amount of $3,053,000) to partially satisfy Marnor's debt to Umami is an "issuance of an order against Marnor's property." (*Id.*) These enforcement efforts in Mexico, and the assignment of Marnor's

property in partial satisfaction of Marnor's debt to Umami trigger Umami's right to set off, as a debtor, under DCL § 151.

Once triggered, DCL §151 provides that every debtor has the right "to set off and apply against indebtedness, whether matured or unmatured" any amount owing from the debtor to the creditor. "[D]ebts may arise from different transactions, but they must be mutual. [D]ebts are mutual when they are due to and from the same persons in the same capacity." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (internal citations and quotations marks omitted, alteration in the original). The right of set off should be interpreted "broadly" to "allow[] entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic,* No. 10-CV-5256 (KMW/DCF), 2016 WL 958640, at *2 (S.D.N.Y. Mar. 8, 2016) (internal quotes omitted).

Here, for the reasons discussed above in Section III.A, the Mexican Interest Judgment represents a sum certain owed by Marnor to Umami. The parties to the Amended Judgment are Marnor and Umami. The parties to the Mexican Judgment also are Marnor and Umami. Thus, there is no question that the debts are mutual. Moreover, there is no need for Umami to attempt to make further collection efforts in Mexico on the Mexican Judgment in Mexico before requesting a set off in this Court as Marnor/Servax as argued in its Response to Umami's initial Motion. *See* Vega Original Decl. ¶ 11; Reply Declaration of Rodrigo Zamora Supporting Original Motion ¶¶ 8-10 (Dkt. No. 267-1). Requiring Umami to undergo further collection efforts in Mexico against an entity that is out of business and has no ability to pay would surely produce the "absurdity" that the right of set off aims to avoid – that "of making A pay B when B owes A." *Thai Lao,* 2016 WL 958640, at *2; *see also Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Without a

set off of the Amended Judgment, Marnor will obtain a windfall of $1.087 million – which the Second Circuit stated would be a "troubling" result, and which Umami does not believe was the Court's intention when it issued the Amended Judgment. *See* Dkt. No. 272 at 8-9.

In addition to its statutory rights under DCL § 151, Umami also is entitled to a common law right of set off. *See In re Westchester Structures, Inc.,* 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) ("New York recognizes both equitable and statutory setoff…Under New York law, to offset debts, they must be mutual") (emphasis added); *In re Bennett Funding Grp., Inc.,* 146 F.3d 136, 139 (2d Cir. 1998) ("There is also no question that New York has long recognized a common law right of setoff….New York also has codified the right to set off.") (internal citations omitted).

For these reasons, Umami is entitled to a set off of the Amended Judgment by the amount of the Mexican Interest Judgment - $1,087,755.09. The Court should reduce the Judgment by that amount, and reduce the Bond accordingly.

### C. If the Court Determines Recognition of a Foreign Judgment is Required, the Mexican Interest Judgment Can and Should Be Recognized

The Court need not recognize the Mexican Interest Judgment as a foreign judgment to grant the requested set-off. *See Thai Lao*, 2016 WL 958640 at *4 (allowing Respondent to offset sanctions award by foreign proceeding costs "even though the foreign awards [were] not presently enforceable in the United States"). Nevertheless, the Mexican Interest Judgment meets all of the requirements for recognition of a foreign judgment pursuant to the Uniform Foreign Country Money-Judgments Recognition Act, as codified in Article 53 of the CPLR. To the extent the Court finds that recognition is required to modify the Amended Judgment, the Court can and should recognize the Mexican Interest Judgment.

Under CPLR § 5302, a foreign country money judgment that is "final, conclusive and enforceable where rendered" is entitled to enforcement in New York. A judgment is final and

enforceable "even though an appeal therefrom is pending or it is subject to appeal." CPLR § 5302; *see e.g., Dresdner Bank AG v. Haque*, 161 F.Supp.2d 259 (S.D.N.Y. 2001) (recognizing foreign judgment according to the requirements of Article 53). A judgment is conclusive as long as it does not fall under one of the two mandatory grounds in CPLR § 5304(a) for denying enforcement of a foreign judgment – neither of which apply here. *See* CPLR § 5304(a) ("(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law; and (2) the foreign court did not have personal jurisdiction over the defendant.").

Here, the Mexican Interest Judgment is "final, conclusive and enforceable where rendered." *See* CPLR § 5302; Zamora Decl. ¶¶ 12, 16. It is "conclusive between the parties" because "it grants…a sum of money" to Umami, of which $1,087,755.09 remains outstanding. *See* CPLR § 5303. Moreover, none of the mandatory grounds for non-recognition apply. The Mexican Interest Judgment was rendered in Mexico, a country that provides impartial tribunals and procedures compatible with the requirements of due process, and there is no question that the Mexican courts had personal jurisdiction over Marnor, a Mexican company. Accordingly, if the Court deems it necessary, it can and should recognize the Mexican Interest Judgment to offset the Amended Judgment.

### D. Marnor's Assignment of the Amended Judgment to Servax Does Not Preclude the Relief Requested

Marnor's assignment of the Amended Judgment to Servax does not impact Umami's entitlement to a setoff. When a judgment has been assigned, the party against whom the judgment was entered still is entitled to set off the judgment by a judgment on its own claims, so long as those claims arose before notice of the assignment. *See Absolute Activist Master Value Fund, Ltd. v. Ewing,* No. 09 CIV. 8862 GBD, 2014 WL 3600409, at *5 (S.D.N.Y. July 11, 2014) (defendant

may bring counterclaim against assignee of a claim if the counterclaim "existed against the assignor before notice of the assignment"); *Fin. One, Inc. v. Timely Textiles, Inc.*, No. 09 CIV. 4624 (JSR), 2010 WL 882907, at *1 (S.D.N.Y. Mar. 8, 2010) (same). Umami's claims arose on or about November 26, 2012, when WBC assigned Umami all interest in the Mexican foreclosure proceedings, as described in the Court's Findings of Fact and Liability at ¶ 93. (Dkt. No. 237 at 30). Marnor and Servax filed the Notice of Assignment of the Amended Judgment over five years later, on April 12, 2018. (Dkt. No. 254). Servax had full notice of Umami's claims well before the assignment through its relationship with Marnor, its participation in this case, and the participation of Servax's counsel as counsel for Marnor as well. Therefore, Umami's right to a setoff against the Amended Judgment is not affected by the assignment.

## IV. THE COURT SHOULD REDUCE THE AMENDED JUDGMENT BY THE CUSTOMS FEE BECAUSE THE ASSESSMENT HAS BEEN VACATED BY THE MEXICAN COURT

The Court also should reduce the Amended Judgment by $750,000 for the Customs Fee pursuant to Rule 60(b)(5). Rule 60(b)(5) permits the modification of a judgment where "it is based on an earlier judgment that has been reversed or vacated." *See also, Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 184 (2d Cir. 2017) (affirming vacatur, pursuant to Rule 60(b)(5), of the District Court's judgment, when the judgment was based on an arbitral award that was subsequently vacated); *Michigan Sur. Co. v. Serv. Mach. Corp.*, 277 F.2d 531, 533 (5th Cir. 1960) (federal court judgment based on a state court judgment that was subsequently reversed should be vacated, stating that "Rule 60(b) is to be liberally construed and applied to carry out the purpose of avoiding… the enforcement of a judgment which has become erroneous even though it may have been proper when entered."),

The Amended Judgment awarded Marnor $750,000 for the Customs Fee to compensate for the tax assessment issued by the Mexican tax authorities against Marnor before trial. *See supra* at

8. Since the trial, the Mexican Administrative Court issued the Tax Decision, which *vacated* the Customs Fee and declared it a nullity. (*See* Padilla Decl. ¶¶7-9.) The vacatur of the Customs Fee has become final as a result of the Superior Court Decision. (*Id*. ¶¶ 10-14.) The Tax Decision cannot be further appealed or challenged, nor can the Customs Fee be reinstated by the Mexican tax authorities. (*Id*. ¶ 12.) Therefore, Marnor no longer has any tax liability for the Customs Fee that was included in the Amended Judgment. For this reason, the portion of the Amended Judgment awarding Marnor the Customs Fee should be reduced under Rule 60(b)(5) because it is based on an assessment that has since been reversed and vacated. Umami believes that the failure to reduce the Customs Fee damages under these circumstances would fall squarely into the situation that the Second Circuit called "troubling". *See* Dkt. No. 272 at 8-9.

In the alternative, the Court should reduce the judgment by the amount of the Customs Fee pursuant to Rule 60(b)(6) because, for the reasons discussed above, the circumstances "justif[y] relief." Unless the Amended Judgment is reduced by the Customs Fee, Marnor will recover $750,000 from Umami to compensate it for an assessment that has been vacated and determined to null and void. There is no basis for Marnor to obtain such a windfall by collecting money from Umami to compensate it for an assessment that no longer exists. Umami does not believe that, in awarding Marnor the $750,000 to pay the Customs Fee assessment the Court intended Marnor to pocket that money if Marnor was no longer obligated to pay that assessment.

Moreover, since the Customs Fee assessment was declared a nullity by the Mexican Court, in effect, Marnor never suffered any damages as a result of the Customs Fee assessment. Unlike the WBC Settlement and the Interest Differential, where the basis for reducing the Amended Judgment arose after the Amended Judgment was entered, the Customs Fee was nullified. So Marnor never incurred any damage as a result of a nullified assessment. Therefore, there is no

basis for Marnor to be paid prejudgment interest on the $750,000 Customs Fee.  Accordingly, the Amended Judgment should be reduced by $174,759.99, the amount of prejudgment interest attributable to the Customs Fee.  *Cf. Candiano v. Moore-McCormack Lines, Inc*., 407 F.2d 385, 387 (2d Cir. 1969) (when judgment had been partially satisfied, plaintiff was only entitled to prejudgment interest on amount not satisfied "[s]ince interest is defined as compensation for the use of money… *plaintiff has a right only to interest on the amount of the judgment he was rightly entitled to. . . .* ") (internal citations omitted and emphasis added)

## V.     UMAMI'S MOTION IS BROUGHT WITHIN A REASONABLE TIME

The relief sought by Umami pursuant to Rule 60(b)(5) and (6) is timely because Umami brings this motion within a "reasonable time."  *See* Rule 60(c)(1).  "What qualifies as a reasonable time…will ordinarily depend largely on the facts of a given case, including the length and circumstances of the delay and the possibility of prejudice to the opposing party."  *Matter of Emergency Beacon Corp*., 666 F.2d 754, 759–60 (2d Cir. 1981).  Although it has been two years after entry of the Amended Judgment, Umami could not have brought the instant motion until after May 28, 2019, when the Second Circuit issued its Mandate.  Immediately following the Mandate, Umami's counsel conferred with counsel for Servax in an attempt to narrow the disputed issues, but those efforts were unsuccessful.  Further, Umami brings the instant motion on the Customs Fee within two weeks of learning of the Superior Court's June 28, 2019 Decision.  (Padilla Decl. ¶ 10.)

Under such circumstances, there is no question that this Motion is brought within a "reasonable time."  *See Matter of Emergency Beacon Corp*., 666 F.2d at 759-60 (two-year lag between order and Rule 60(b)(6) challenge to order was reasonable); *P.T. Busana Idaman Nurani*, 151 F.R.D. at 35–36 (motion to vacate brought two years after entry of judgment was made within "reasonable time"); *Madigan v. J.P. Gibbons & Co., Inc.,* No. 16-965 (RRM)(PK), 2018 WL 4522087, at 2 (E.D.N.Y. June 13, 2018) (motion brought one month after recognition in New York

of a 13-year old foreign judgment because there would have been no reason to challenge the judgment before recognition). Moreover, Marnor/Servax will not suffer any prejudice if it the Amended Judgment is reduced for the reasons stated herein because reducing the Amended Judgment only ensures that Marnor/Servax does not receive a "troubling" windfall.

<u>CONCLUSION</u>

For the reasons set forth herein, Umami respectfully requests that the Court reduce or offset the Amended Judgment by $2,762,535.08 and reduce the Bond by $3,038,788.58.

Dated: New York, New York
      August 21, 2019

Respectfully submitted,

**GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP**

By: *_/s/ Martin S. Siegel_*
Martin S. Siegel, Esq.
Elizabeth C. Conway, Esq.
msiegel@golenbock.com
econway@golenbock.com
711 Third Avenue
New York, New York 10017
T:  (212) 907-7300
F:  (212) 754-0330

**KURZMAN EISENBERG CORBIN
& LEVER LLP**
Bruce W. Bieber, Esq.
BBieber@kelaw.com
1 North Broadway, 12th Fl.
White Plains, New York 10601
T: (914) 285-9800
F: (914) 993-6003
*Attorneys for Defendant*
*Umami Sustainable Seafood, Inc.*