UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────x

MARICULTURA DEL NORTE, S. DE R.L. DE
C.V. and SERVAX BLEU, S. DE R.L. DE C.V.,

      Plaintiffs,

  -against-                                          No. 14 Civ. 10143 (CM)

WORLDBUSINESS CAPITAL, INC.; UMAMI
SUSTAINABLE SEAFOOD, INC.; CRAIG A.
TASHJIAN; and AMERRA CAPITAL
MANAGEMENT, LLC,

      Defendants.
──────────────────────────────────────────

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UMAMI'S MOTION TO REOPEN AND REDUCE THE AMENDED JUDGMENT, DENYING PLAINTIFF SERVAX'S MOTION TO REOPEN AND INCREASE THE AMENDED JUDGMENT, AND GRANTING PLAINTIFF SERVAX'S MOTION FOR A WRIT OF EXECUTION**

McMahon, C.J.:

      Pending before this Court is the latest round of post-trial motions arising out of the August 24, 2017 judgment for Plaintiffs Maricultura del Norte, S. de R.L. de C.V. ("Marnor") and Servax Bleu, S. de R.L. de C.V. ("Servax"). (Dkt. No. 251; hereinafter, the "Amended Judgment" or "AJ".) The parties cross-appealed from this Court's award of $3,094,447.16 to Plaintiffs, and the Second Circuit affirmed. *Maricultura del Norte, S. de. R.L. de C.V., et al. v. Umami Sustainable Seafood*, 769 Fed. Appx. 44 (2d Cir. 2019). Both parties have submitted motions to reopen and revise the Amended Judgment in light of post-judgment events.

      First, Servax, on its own behalf and as the assignee of Marnor's interest in the Amended Judgment (*see* Dkt. No. 254), moves for a turnover order and a writ of execution in the amount of $2,409,481.42 against Defendant Umami Sustainable Seafood, Inc. ("Umami") and the surety

1

of Umami's supersedeas bond, Atlantic Specialty Insurance Company ("Atlantic"). (Dkt. No. 273; the "Writ Motion" or "WM".) The new total reflects Servax's calculation of additional interest that has accrued since the Amended Judgment, as well as a reduction of $750,000 representing a settlement agreement between Servax and WorldBusiness Capital, Inc. ("WBC"; the "WBC Settlement"), Umami's codefendant.

For its part, Umami moves under Federal Rule of Civil Procedure 60(b) to reopen and reduce the Amended Judgment by $2,762,535.08, which is the sum of the following: (i) the WBC Settlement; (ii) a $1,087,755.09 interest judgment entered in Umami's favor (the "Mexican Interest Judgment") in the related foreclosure proceeding brought against Marnor in the Tenth District Court in the State of Baja California in Ensenada (the "Mexican Court"); (iii) a $750,000 tax assessment owed by Marnor to the Mexican Tax Authority (the "Customs Fee"), which Marnor has yet to pay, and which a Mexican Administrative Court nullified on June 28, 2019, as well as $174,759.99 in associated prejudgment interest. (Dkt. No. 277; "Umami's Rule 60 Motion".) Umami also asks that this Court make corresponding and proportional reductions to the supersedeas bond offered by Atlantic to secure the judgment while the parties appealed.

In response, Servax makes a Rule 60 motion of its own (Dkt. No. 286; "Servax's Rule 60 Motion"), seeking to increase the Amended Judgment by $1,638,833.32 to account for an award of attorneys' fees and costs that Umami obtained from the Mexican Court against Marnor (the "Mexican Fee Award"), after this Court ruled that Marnor was entitled to any "legal fees and costs incurred from and after November 9, 2012, in the Mexican foreclosure proceeding," (AJ ¶ 3), which Marnor would not have incurred but for the Defendants' conduct.

The motions are disposed of below.

**BACKGROUND**

A.     **Facts**

The Court assumes familiarity with the underlying facts, as set forth in its Findings of Fact, Conclusions of Law, and Verdict on Liability, dated July 28, 2017. (Dkt. No. 237.)

To summarize, this dispute arises out of a 2005 Credit Agreement between Marnor and WBC, under which Marnor received a loan for $9.9 million, and WBC received a first preferred mortgage and second preferred mortgage on Marnor's fleet of fishing boats. (Findings of Fact, at 2, 4 ¶¶ 5, 12.) After Marnor defaulted on the loan in March of 2011, it worked with WBC to explore several options to restructure, repay, or refinance its obligations under the Credit Agreement, but none were successful. (*Id.* ¶¶ 18-21.)

Eventually, Marnor found the funds to get itself out of arrears by partnering with Grupo Altex ("Altex") to form the joint venture Servax over the summer of 2012. (*Id.* ¶ 34-35.) But WBC wanted out of the Credit Agreement. On August 23, 2012, WBC commenced the foreclosure proceedings in the Mexican Court. (*Id.* ¶ 51.) The next day, the Mexican Court ordered the seizure Marnor's fishing vessels, effectively shuttering Marnor's fishing business. (*Id.* ¶ 55.) That seizure led to the Mexican authorities imposing the Customs Fee for taxes owed in connection with the repatriation of Marnor's fleet. (Dkt. No. 237, Findings of Fact on Liaibility, at 68 ¶ 35.)

On November 7, 2012, Marnor and Servax informed WBC they had assembled the funds necessary to cure Marnor's default – by that point, $6.01 million – as was their right under the Credit Agreement. (Findings of Fact, at 27–28 ¶¶ 82, 86.) Had WBC accepted the payment, it would have mooted the foreclosure action. Yet, despite Servax's willingness and ability to repay Marnor's debts, WBC refused to provide an accounting of the precise amount owed, and refused to accept the $6.01 million offered. (Dkt. No 237, Findings of Fact on Liability, at 52 ¶ 1.)

3

That denial was due to plans WBC had made in the midst of Marnor's struggles. Unbeknownst to Marnor, while Marnor's debts were piling up, and before it commenced the foreclosure action, WBC began negotiating an option agreement with Umami that would allow Umami to purchase WBC's rights under the Credit Agreement for $500,000, and to purchase Marnor's fleet in foreclosure for $3 million. (*Id.*, Findings of Fact, at 8–9 ¶¶ 26-28.)

Showing utter disregard for its obligations under the Credit Agreement, WBC ignored Plaintiffs' attempts to cure, and refused to provide an accounting to Marnor so that Marnor could furnish the precise amount owed. (*Id.*, Findings of Fact on Liability, at 46, 48 ¶¶ 136, 146–47.) And, once WBC and Umami had executed the option agreement, Umami substituted itself for WBC as the party in interest before the Mexican Court, refused further out-of-court entreaties from Marnor and Servax to pay the debt, and ultimately obtained assignment of Marnor's vessels in November of 2016 by order of the Mexican Court. (*Id.* ¶¶ 158–59.)

## B. Relevant Procedural History

Before the foreclosure proceedings concluded, Plaintiffs commenced this action. (*See generally* Dkt. No. 1.)

Following a bench trial, on July 28, 2017, this Court found WBC and Umami liable for breach of contract, citing WBC's November 2012 refusal to allow Marnor to redeem its loan outside of court and Umami's April 2013 refusal to accept the $ 7.9 million payoff from Servax in satisfaction of Marnor's debt.

The subsequent Amended Judgment awarded Marnor $ 3.1 million in damages, comprising: (1) the $ 1.55 million "interest-differential" award, representing the difference between the judgment awarded to Umami in the Mexican foreclosure proceeding and the $ 6.01 million that Marnor would have paid to WBC had allowed it been allowed to cure in November 2012; (2) $210,000 in legal fees and costs incurred in the Mexican foreclosure action after

4

Marnor's attempt to cure;[1] (3) the $750,000 Customs Fee caused by WBC's decision to foreclose on Marnor's fleet; and (4) prejudgment interest on the above sums in the amount of $ 585,000 pursuant to N.Y. C.P.L.R. § 5001.  WBC posted a supersedeas bond in the amount of $3,147,850, representing 111% of the Amended Judgment.  (*See* Dkt. No 247.)

Both parties took appeals from the judgment.  (*See* Dkt. Nos. 245, 247, 252, 253.)

In April 2018, while those appeals were pending, Marnor assigned its interest in the Amended Judgment to Servax.  (*See* Dkt. No. 254, Notice of Assignment.)  Marnor and Servax then entered into a settlement agreement for $750,000 with WBC, and withdrew their appeal as to WBC on June 6, 2018.  (Dkt. No. 255.)  Upon WBC's dismissal from the case, Umami posted a new supersedeas bond in the amount of $3,434,836.35 (reflecting the accrual of prejudgment interest since WBC posted its initial bond), with Atlantic as its surety.  (Dkt. No. 256.)

Even though this Court awarded Marnor all of its "legal fees and costs incurred from and after November 9, 2012, in the Mexican foreclosure action," Umami continued to press its claims before the Mexican Court. On July 20, 2018, Umami obtained the Mexican Interest Judgment, for $1,087,755.09 that Marnor owed in interest under the Credit Agreement.  (*See* Dkt. No. 280, Zamora Decl. ¶¶ 14-15 & Ex. B.) In addition, on October 23, 2018, the Mexican Court awarded Umami the Mexican Fee Award to compensate Umami for its attorneys' fees and costs in the foreclosure action.

While Umami's appeal of the Amended Judgment was still pending before the Second Circuit, it moved this Court to reopen and reduce the Amended Judgment by the amounts of the WBC Settlement and the Mexican Interest Judgment. (*See* Dkt. No. 261.)  This Court denied the

---

[1] The Court found WBC and Umami jointly and severally liable for all damages after January 28, 2013, when Umami first breached the Credit Agreement. (Dkt. No. 237, Conclusions of Law, at 71 ¶ 45.)   Prior to that date, the Court found the WBC, and WBC alone, responsible for the fees.

motion for lack of jurisdiction. *Maricultura del Norte, S. de. R.L. de C.V., et al. v. WorldBusiness Capital, Inc.*, No. 14-cv-10143, 2019 WL 2117645 (S.D.N.Y. Apr. 26, 2019) (Dkt. No. 269).

Shortly after Umami filed that first attempt to reopen and reduce the judgment, the Northwest Administrative Court I of the Administrative Justice Federal Court vacated the Customs Fee. (*See* Dkt. No. 278, Padilla Decl. ¶¶ 5-9 & Exs. B & C; the "Tax Decision".) The administrative court concluded that the tax authority had failed to provide an intelligible basis for its assessment, or cite to relevant legal authority in support of its ruling. (*Id.*) That order vacating the Customs Fee was affirmed on appeal. (*Id.* Exs. D & E.)

On May 7, 2019, the Second Circuit affirmed all four components of the Amended Judgment now challenged by Umami. *Maricultura del Norte, S. de. R.L. de C.V., et al. v. Umami Sustainable Seafood*, 769 Fed. Appx. 44 (2d Cir. 2019). The court rejected Umami's claims that the Amended Judgment violated principles of international comity, concluding that this Court's "interest-differential" and attorneys' fees award, which flowed from the Defendants' breaches of the Credit Agreement, did not interfere with the parallel Mexican action, since there were no breach of contract claims before the Mexican Court. *Id.* at 50-51. The Second Circuit further held that Umami's challenge to Amended Judgment based on the Administrative Court decision vacating the Customs Fee was "better addressed via a motion to reopen the judgment in the district court" under Rule 60. *Id.* at 51.

This Court regained jurisdiction once the Second Circuit issued its mandate. (Dkt. No. 272.)

## DISCUSSION

It is first necessary to address each Rule 60 motion in turn before deciding the proper value of the turnover order and the writ of execution requested in the Writ Motion.

### I. Umami's Rule 60 Motion is Granted in Part and Denied in Part.

#### A. Rule 60 Standard

Motions under the Rule 60(b) ask this court to tap into a "grand reservoir of equitable power to do justice in a particular case." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks and citations omitted). Accordingly, they "are generally granted only upon a showing of exceptional circumstances," *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer v. Baker*, 793 F.2d 58, 6162 (2d Cir. 1986)), or "when the judgment may work an extreme and undue hardship," *Mendes Junior Intern. Co. v. Banco Do Brasil S.A.*, 394 Fed. Appx. 787, 788 (2d Cir. 2010) (quoting *Nemaizer*, 793 F.2d at 63). The burden is on the moving party to demonstrate that it is entitled to relief, and courts "Generally . . . require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co., Ltd. V. Gov. of Lao People's Dem. Republ.*, 864 F.3d 172, 182 (2d Cir. 2017) (internal quotation marks omitted). Lastly, all motions under Rule 60(b) must be made within a reasonable time – one year for motions brought under subsections (1), (2), or (3), which cover instances of excusable neglect, newly discovered evidence, or fraud. *See Stevens*, 676 F.3d at 67; FED. R. CIV. P. 60(c)(1). The decision whether to grant relief under Rule 60 "is addressed to the sound discretion of the district court." *Thai-Lao*, 864 F.3d at 182.

#### B. Umami's Rule 60 Motion is timely.

Servax contends that Umami's motion is actually a motion to alter or amend a judgment made pursuant to Fed. R. Civ. P. 59(a) and so argues that it is untimely. I reject this contention.

7

Under Rule 59, a party must move "no later than 28 days after the *entry* of the judgment." FED. R. CIV. P. 59 (emphasis added). Servax contends that Umami was required to make any motion to alter or amend the judgment within 28 days of the issuance of the mandate by which the judgment was affirmed and returned to this court, which occurred on May 28, 2019. (Dkt. No., 272[2]) Umami's motion was filed three months after the issuance of the mandate, on DATE. (Dkt. No . 287, Servax's Rule 60 Mot. Br. at 6-7.)

Not so. Umami's Rule 60 motion seeks inherently equitable relief that it contends is necessary in light of postjudgment developments. The motion is not seeking to revisit this Court's original ruling (which has been affirmed on appeal), but to update the Amended Judgment in light of changed circumstances. The 28-day time limit under Rule 59 is inapplicable to such a request. *See, e.g.*, *Ass'n of Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553 (2d Cir. 1995).

Furthermore, both this Court and the Second Circuit directed Umami to bring these matters up on a Rule 60 Motion once this Court regained jurisdiction. *See, e.g.*, *Maricultura*, 769 Fed. Appx. at 51. It would hardly be appropriate to penalize Umami for following the court's orders.

Umami's motion is brought under subsections (5) and (6) of Rule 60. Such a motion must be made within "a reasonable time" after entry of the judgment. Whether a party has moved within a reasonable time depends on a variety of case-specific factors, including "the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-*

---

[2] The court lacked jurisdiction to revisit the judgment during the pendency of the appeal, so the date when the judgment was originally entered – August 24, 2017 – is irrelevant to the discussion of when the motion had to be filed.

*Lao*, 864 F.3d at 182. Three months after the issuance of the mandate is a reasonable time for making the motion. Servax's effort to have the motion denied as untimely is denied.

> **C. Umami's Motion to Reduce the Amended Judgment by the amount of the WBC Settlement is granted.**

A court may amend its prior judgment to the extent it "has been satisfied, released, or discharged." FED. R. CIV. P. 60(b)(5). When one defendant in a multi-defendant action settles, the non-settling defendants are entitled to credit the amount of the settlement against any remaining judgment. *See, e.g.*, *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (citing *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

Here, Umami and Servax agree that a $750,000 reduction in the Amended Judgment is necessary in light of the WBC Settlement. (*See* Dkt. No. 274, WM Br. at 3.) Therefore, the Amended Judgment and is reduced by $750,000. The supersedeas bond must be reduced accordingly.

> **D. Umami is not entitled to set off the Mexican Interest Judgment Against This Court's Amended Judgment.**

Umami invokes New York Debtor & Creditor Law § 151, as well as New York common law, to argue that it can set off the Mexican Interest Judgment from its total debt owed to Servax under the Amended Judgment. (Umami's Rule 60 Mot. Br. at 15-20.) Under DCL § 151, a debtor enjoys a, "Right of set off against unmatured debts" in the event "of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of a creditor," *e.g.*, Servax. DCL § 151(e). Umami argues that the Mexican Interest Judgment is an order against Servax's property that must be deducted from Umami's debts to Servax in the Amended Judgment, because this Court must recognize the Mexican judgment under the New York Uniform Foreign Money-Judgments Recognition Act (the "Recognition Act"), N.Y. C.P.L.R. §§ 5301–5309.

Unfortunately for Umami, a judgment creditor may only invoke the Recognition Act in one of three circumstances. "A foreign judgment is enforceable by an action on the judgment, a motion for summary judgment in lieu of a complaint, or in a pending action by counterclaim, cross-claim or affirmative defense." CPLR § 5303; *see, e.g.*, *Yi Feng Leather Intern. Ltd v. Tribeca Design Showroom, LLC*, No. 17-cv-5195, 2019 WL 4744620 (S.D.N.Y. Sept. 30, 2019) (complaint filed to enforce foreign judgment); *Diaz v. Galopy Corp. Int'l, N.V.*, 61 Misc. 3d 429, 79 N.Y.S.3d 494 (N.Y. Sup. Ct. 2018) (creditor moved for summary judgment in lieu of complaint to enforce foreign judgment). But a motion under Fed. R. Civ. P. 60(b) is not one of the three types of proceedings in which the Recognition Act may be invoked. Moreover, no authority cited by Umami allows this Court to recognize and enforce a foreign judgment ordering Party A to pay Party B in the context of a motion for relief from judgment ordering Party B to pay Party C. That procedural defect would be fatal to Umami's motion, even if Servax were the judgment debtor in the Mexican foreclosure action – which it is not and never was.

Moreover, were this a procedurally proper application, this court would not be inclined to set off the post-judgment Mexican Interest Judgment against the award made by this court. Umami obtained the Mexican Interest Judgment long after this court concluded that the Mexican foreclosure proceedings were undertaken in bad faith and in violation of the Credit Agreement. I had already made it quite clear that Umami should not be allowed to profit from the bad faith foreclosure proceedings. That is why this Court awarded Marnor the $1.55 million "interest-differential," representing difference between the interest awarded to Umami in the Mexican foreclosure proceedings as of the date of the Amended Judgment and the $6.01 million in interest that Marnor would have paid WBC, "Had WBC satisfied its contractual obligation[s] . . . and

10

permitted Marnor to pay off the loan on November 9, 2012." (Findings of Fact and Conclusions of Law, at 65 ¶ 21.)

The interest-differential award was justified because, absent WBC's (and later Umami's) breaches of contract, WBC would not have initiated the foreclosure proceedings, and Umami would not have obtained the interest awards from the Mexican Court that pre-dated the entry of judgment in this case. The Second Circuit affirmed this Court's award of the "interest differential." *Maricultura*, 769 Fed. Appx. at 51. Having concluded that previous awards of interest by the Mexican court were obtained in bad faith, this court would be hypocritical to offset the judgment already entered by yet another interest award obtained in bad faith. To the contrary: this court's Findings of Fact and Conclusions of Law made clear that WBC and Umami would have to pay Marnor for its "legal fees and costs incurred from and after November 9, 2012," (AJ ¶ 3), as well as "any additional sums," (Findings of Fact on Liability, 65 ¶ 21) associated with the foreclosure action.

Accordingly, Umami's application to set off the Mexican Interest Judgment against this Court's Amended Judgment is denied.

### E. Umami's motion to Reduce the Amended Judgment by the Amount of the Customs Fee is Held in Abeyance Pending Receipt of Further Information.

Finally, Umami asks this Court to reduce the Amended Judgment by $750,000, plus associated interest, as a result of the Administrative Court's order vacatur of the Customs Fee – an element of the Amended Judgment -- which was affirmed on review by the Mexican Superior Court. (Dkt. No. 281 at 20-22.) This portion of Umami's Rule 60 Motion is made under Rule 60(b)(5), which permits a court to grant relief from a final judgment where "the judgment . . . is based on an earlier judgment that has been reversed or vacated." FED. R. CIV. P. 60(b)(5).

Umami argues that, once the Administrative Court vacated the Mexican tax authority's decision, "Marnor no longer ha[d] any tax liability," thus depriving this Court of its basis for including the Customs Fee as compensatory damages. (Dkt. No. 281 at 21.) As a result, Umami concludes that it should not be required to pay the portion of the Amended Judgment based on the Customs Fee. (*See* Findings of Fact on Liability, at 68, ¶¶ 32–35.)

Umami also claims, albeit without providing any documentary support, that it has paid the customs fees and taxes associated with repatriating the vessels in question, which negates any prospect of another audit by the Mexican tax authority and the reimposition of any customs tax against Marnor. (Dkt. No. 293, Padilla Decl. ¶ 10.)

If Marnor has no obligation to pay the $750,000 in customs taxes, there would seem to be no reason not to reduce the judgment by that amount. But Servax argues that the tax was vacated due to a "procedural violation" and can be reimposed. Whether that is true or not is unclear. The judgment vacating the tax does indeed indicate that the Mexican taxing authority can "pronounce a new decision or resolution….[to] remedy the omission." (Padilla Decl. Ex. C at 35) But Servax's witness, Eduardo Diaz Gavito (a Mexican attorney with expertise in trade and customs law), testified that the taxing authority had just four months after the tax was vacated and the notice of remand issued to reinitiate assessment of the customs fee against Marnor. (Dkt. No. 289, Gavito Decl. ¶ 24.) That four month window closed long ago; no one has advised the Court that the Mexican taxing authority has taken any steps to reimpose the tax.

If the tax can no longer be reimposed, there is no reason not to amend the judgment. I will give the parties ten business days to provide me with evidence either that the tax is being reimposed or that is has been permanently vacated and cannot be reimposed under Mexican law.

Umami's Rule 60 Motion is held in abeyance with respect to the Customs Fee until I receive this additional information.

## II. SERVAX'S RULE 60 MOTION IS DENIED.

This Court's Findings of Fact and Conclusions of Law determined that all of the awards against Marnor in the Mexican foreclosure proceeding, as well as Marnor's fees and costs "from and after November 9, 2012," were caused by and flowed directly from WBC's and Umami's breaches of contract. (AJ ¶ 3.) This Court reasoned that the Mexican Court "never would have awarded Umami any additional sums" in the foreclosure proceeding had WBC honored its contractual obligations. (Findings of Fact on Liability, at 65 ¶ 21.) For that reason, the Second Circuit affirmed this Court's damages awards, and held that Amended Judgment had no effect on the Mexican foreclosure proceeding or the Mexican Court's judgments, but only used the awards in that case as a "benchmark" for assessing the breach of contract damages. *Maricultura*, 769 Fed. Appx. at 51.

Nonetheless, following the entry of the Amended Judgment, Umami applied to the Mexican Court for $1,638,833.32 in attorneys' fees and costs, and obtained yet another award against Marnor in the same litigation that this Court deemed to "constitute bad faith frustration of Marnor's contract rights." (*Id.* at 60 ¶ 12.)

I question whether Rule 60 is the appropriate vehicle through which either Marnor or Servax could recover this fee award from Umami, not least because Servax cites no case where a court increased a prior judgment for breach of contract damages due to new, postjudgment breaches of the same agreement. The Mexican court's judgment imposing liability on Marnor for Umami's attorneys' fees was entered after the entry of the Amended Judgment in 2017. It was not the subject of litigation in this court. It could not have been the subject of litigation in this court. As subsequent breaches of contract often have to be the subject of entirely new actions,

13

any challenge by Marnor to the payment of these attorneys' fees is not properly taken up in the context of a motion for relief from the Amended Judgment.

Servax's Rule 60 Motion is, therefore, denied.

### III. THE WRIT MOTION IS GRANTED IN PART.

Federal Rule of Civil Procedure 69(a) allows federal courts to enforce money judgments by an action that comports with the procedures of the state where the court is located. *See* FED. R. CIV. P. 69(a). Servax moves for turnover orders and writs of execution against Umami and Atlantic pursuant to New York Civil Practice Law and Rules ("CPLR") sections 5225(b) and 5230. The court considers each of those sections in turn.

> **A. Servax is entitled to a turnover order in the amount of the Partial Judgment under CPLR § 5225(b).**

A turnover order under CPLR § 5225(b) allows a judgment creditor to execute upon property that belongs to a judgment debtor but is in the possession of a third party. *See N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 717 F.3d 266, 267 (2d Cir. 2013). When there is a sufficient showing to conclude that the third party actually possesses the property in question, Courts undertake a "two-step analysis" to determine whether the third party must turn over the property to the creditor. *See Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991). First, the court must first find that the debtor "has an interest" in the property the creditor seeks to obtain. *Id.* If the debtor has such an interest, the court must then find either that the debtor is entitled to possess the property, *or* that the creditor's rights to the property are superior to those of the third party. *Id.* If the court makes an appropriate finding under both steps may it order the third party to turn over property to the creditor. *Id.* at 840-41; *see also Ladjevardian v. The Republic of Argentina*, No. 04-CV-2710 (TPG), 2016 WL 3039189,

at *2 (S.D.N.Y. May 26, 2016), *aff'd sub nom. Mohammad Ladjevardian, Laina Corp. v. Republic of Argentina*, 663 F. App'x 77 (2d Cir. 2016).

The July 2, 2018 supersedeas bond notice both establishes the threshold requirement that Atlantic possesses the bond and satisfied the two-part test. (*See* Dkt. No. 256.) There can be no dispute that Umami has an interest in the bond by which it is "held and firmly bound . . . in furtherance of the judgment." (*Id.*) Furthermore, the bond memorialized Atlantic's promise to satisfy the judgment "to be paid to Maricultura . . . if . . . the Judgment is affirmed," thus establishing that Servax's interest as Maricultura's assignee is superior to that of Atlantic – with the exception of the WBC settlement. (*Id.*)

Servax therefore has rights to the Partial Judgment, to be deducted from the bond under § 5225(b), and may obtain relief in the form of a turnover order against the bond , with the exact amount to be determined after the Court rules on Umami's motion to deduct the Customs Fee from the Amended Judgment.

### B. Servax is entitled to a writ of execution under CPLR § 5230.

Servax seeks a writ of execution under CPLR § 5230, which allows courts to authorize "an execution" on property to satisfy a judgment. An execution is an instrument "delivered to the court's enforcement officer, usually the sheriff, directing the sheriff to levy against any nonexempt property that can be found belonging to the judgment debtor." CPLR Commentaries 5230:1. Like § 5225(b), § 5230 requires a creditor to show that the debtor "has an interest" in the property. CPLR § 5230(a). For the reasons outlined above, Servax has an interest in a portion of the bond yet to be determine (*see* Section III.A, *supra*), and, accordingly, Servax is entitled to a writ of execution under CPLR § 5230 for that amount.

## CONCLUSION

Umami's Rule 60 Motion (Dkt. No. 277) is GRANTED in part with respect to the WBC Settlement, DENIED with respect to the Mexican Interest Judgment, and held in abeyance for ten days with respect to the Customs Fee.

Servax's Rule 60 Motion (Docket 286) is DENIED.

Servax's Writ Motion (Docket 273) is GRANTED, WITH THE EXACT AMOUNT TO BE DERERMINED IN TEN DAYS.

Umami's motion to strike (Dkt. No. 299) is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 273, 277, 286, and 299. This constitutes the written decision and order of the Court.

Dated: February 14, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL